IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOAN LE, | : | |
|     Petitioner | : | |
| | : | NO. 06-CR-585-2 |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent | : | |

**MEMORANDUM AND ORDER**

GENE E.K. PRATTER, J.                                                                                                                    JULY 30, 2008

      Hang Le pleaded guilty to drug dealing and money laundering on May 17, 2007, admitting that she purchased with the proceeds of her drug trafficking a house at 5344 Claridge Street in Philadelphia, Pennsylvania, and placed the house in her sister's name in an attempt to hide the asset from the Government should her drug offenses be discovered. As part of her plea agreement, Hang Le agreed not to contest forfeiture of the house. However, after the Government moved for judgment of forfeiture, Hang Le's sister, Loan Le, moved for the release of the property to her. Loan Le asserts that she lawfully purchased the house and remains its rightful owner.

      Presently before the Court is the Government's Motion for Judgment of Forfeiture and Loan Le's Motions for Return of Property. The Government asserts Hang Le purchased the house with the proceeds of her drug trafficking offenses, and that Hang Le titled the house in the name of her sister, Loan Le, in an attempt to prevent the Government from seizing the property. Loan Le maintains that she purchased the house with her own money and is the rightful owner. For the reasons set forth below, the Court will grant the Government's Motion for Judgment of

Forfeiture and deny Loan Le's Motions for Return of Property.

## I. Legal Standard

The Government may take certain property relating to a drug trafficking offense. Federal law states that:

> [a]ny person convicted of a [drug trafficking] violation...shall forfeit to the United States...
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation; [and]
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation....

21 U.S.C. § 853(a).

Federal law also provides procedures to be followed to litigate the rights of third-party interests in property the Government seeks to seize if those third parties either are bona fide purchasers for value or have a legal right, title or interest in the property. See, 21 U.S.C. § 853(n). The petition of a third-party "shall be signed by the petitioner under penalty of perjury." 21 U.S.C. § 853(n)(3). The petitioner then has a right to a hearing on the matter, during which "both the petitioner and the government have the opportunity to present evidence and to cross examine opposing witnesses." U.S. v. Rockwell, 677 F. Supp. 836, 839 (W.D. Pa. 1988) (citing 21 U.S.C. § 853(n)(5)). During the hearing, the petitioner must present evidence in support of her claim. The petitioner bears the burden of proof to establish her claim by a preponderance of evidence. Rockwell, 677 F. Supp. at 839 (citing 21 U.S.C. § 853(n)(6)). See also, U.S. v. Morgan, 202 U.S. Dist. LEXIS 8019, at * (E.D. Pa. May 5, 2002); U.S. v. Nava, 404 F.3d 1119, 1125 (9th Cir. 2005); U.S. Saccoccia, 354 F.3d 9, 13 (1st Cir. 2003); U.S. v. Gilbert, 244 F.3d

888, 911 (11th Cir. 2001).

A petitioner's bald assertion that the property is titled in her name is not sufficient for filing a claim under § 853(n).  "Failing to look beyond bare legal title or whether the petitioner has a property interest under state law would foster manipulation of ownership by persons engaged in criminal activity."  U.S. v. Morgan, 224 F.3d 339, 343 (4th Cir. 2000) (citing U.S. v. Liscum Drive, Dayton Montgomery County, 866 F.2d 213, 217 (6th Cir. 1989).  Accordingly, the Court must ask whether the petitioner is a "nominee," meaning "existing in name only, not in reality."  Id. at 434 & n.4 (citations omitted).  See also, U.S. v. Weiss, 467 F.3d 1300, 1303 n.1 (11th Cir. 2006).  To determine whether the petitioner is a true owner or a nominee, the Court must look to whether the petitioner had actual dominion and control over the property at issue.  See, In re Bryson, 406 F.3d 284, 291 (4th Cir. 2005) (finding no dominion and control where third-party petitioner in whose name the property was titled did not pay for the property and did not pay taxes on the property); Morgan, 224 F.3d at 343 (finding no dominion or control where a third-party petitioner did not control the money in the account in question and did not have knowledge of how her husband managed and used the account).

The Fourth Circuit Court of Appeals case In re Bryson, 406 F.3d 284 (4th Cir. 2005), provides useful analytical context for the issue here.  In Bryson, the defendant father was convicted of fraud, and the court ordered that his assets be forfeited.  Included in the forfeiture petition was a valuable piece of real estate titled in his son's name.  In the ancillary forfeiture proceeding, the son asserted that the land belonged to him and presented evidence that he held title.  However, the court rejected the son's assertion after learning that the father purchased the real estate but put it into his son's name; the father gave the son a promissory note evidencing a

3

debt owed to the father so that the son could settle the debt on the land; the land was signed into the son's name at the time the father was under investigation for fraud; and the son did not pay taxes on the land until several years after its acquisition.  406 F.3d at 291.  The court found that the father bought the real estate, exercised dominion and control over it, and directed that it be titled in his son's name.  Accordingly, the land was forfeited to the Government.  Id.

 II. Testimony

During the evidentiary hearing on this matter, which was held over the course of two days on June 23, 2008 and July 16, 2008, the Court received evidence from both Loan Le and the Government as to the true ownership of the house at issue.

Loan Le testified during the hearing that Hang Le told her in 2005 or 2006 that her landlord wanted to sell the house where Hang Le was then living.  Tr. 6/23/08 at 17.  Several weeks later, Loan Le went to speak to the landlord, who she knew only as "Mo."  The landlord said that the house was for sale for $25,000.  Id. at 18.  Loan Le and her fiancé planned to buy the house, complete repairs and sell it for a profit.  Id. at 17.  Loan Le testified that she withdrew $25,000 in cash from a bank branch to pay for the house.  She took the money to an attorney's office where she received a receipt during the closing.  Id. at 20-22.  Loan Le said that she never lived in the house on Claridge Street.  Instead, Hang Le continued living there and sometimes paid Loan Le rent.  Id. at 23.  Loan Le and her fiancé went to the house to make repairs, including repairs to the roof, but they did not keep any receipts from the materials they bought for the work. Id. at 32-33.

Loan Le said she got the money for the house on Claridge Street by refinancing a house

she owns on Saybrook Street in Philadelphia. Loan Le said that the refinancing netted approximately $45,000, which she deposited into an account at the Bank of America. Id. at 17, 34. When questioned by the Court, Loan Le said that she withdrew $25,000 in cash to pay for the house on Claridge Street from a branch of the Bank of America. However, she could not recall which branch or any details about its general location. Id. at 31. She said that she took the bus to the bank, withdrew the money and took the money home, where she kept it in a box for several weeks.[1] Id.

Loan Le's fiancé, My Nguyen, testified that he and Loan Le completed a number of repairs at the house on Claridge Street. He said that they replaced the roof for approximately $3,600, replaced a leaking window, and fixed a leaky bathroom pipe as well as completing other minor repairs. Tr. 6/23/08 at 40-42. My Nguyen estimated that he and Loan Le spent $15,000 repairing the house. Id. at 42. He said that the money came from the refinancing of their other house and from Mr. Nguyen's salary. Id. at 43. He paid for everything he bought for the repairs with cash because he does not use checks. Id. at 47.

The Government called numerous witnesses who described a series of transactions involving the house on Claridge Street and, without exception, each stated that Loan Le did not pay anything for the house and never lived there. These witnesses supported the Government's

---

[1]The Government disputes this assertion. The Government introduced Loan Le's complete Bank of America records, which show a deposit of $45,438.75 made on October 7, 2005 from two separate checks, one for $25,000 and one for 20,438.75. See, Government Ex. 4. The Government asserts that this deposit consisted of the proceeds from the settlement of a lawsuit brought by Loan Le and her fiancé, My Nguyen, following an automobile accident. Tr. 7/16/08 at 47. Further, Loan Le's bank records indicate that on December 13, 2005 she wrote a check for $45,000 to Quang Huyah. Government, Ex. 4. The bank records of Loan Le's account contain no evidence of any $25,000 cash withdrawal that could conceivably support her testimony. Indeed, the Bank's record seriously undermines Loan Le's testimony.

position that Loan Le was merely the nominal, not actual, owner of the house.

Jenny Ngo testified that she purchased the house on Claridge Street during the summer of 2004 for $80,000, intending to move to the area to live closer to her mother and brother, who both live on the street.  Tr. 6/23/08 at 51-52.  Ms. Ngo never moved into the house because her children did not want to leave their King of Prussia school.  Id. at 52.  She considered cancelling her contract on the house, but she did not want to lose her deposit.  Accordingly, Ms. Ngo agreed to buy the house on behalf of her brother's friend, Jackie Vong.  Mr. Vong gave Ms. Ngo the money to pay the mortgage each month, and he lived in the house with his wife and children.  Id. at 53-54.  After about a year, Ms. Ngo noticed more and more people coming and going from the house, so she told Mr. Vong that she wanted him to find someone else to whom to transfer the house.  Id. at 54.

Ms. Ngo eventually transferred title to the house into her sister-in-law's name, Busaba Chang.  Id. at 56.  Ms. Chang did not give Ms. Ngo any money for the house.  Rather, Ms. Ngo said that she paid off the mortgage prior to transferring the title to Ms. Chang, and Mr. Vong continued paying her while he lived in the house.  Id. at 58.  After Mr. Vong moved out of the house, Ms. Ngo's brother Sang moved into the house with Hang Le.  Id. at 60.

Busaba Chang[2] testified that she transferred title of the house on Claridge Street to her name in order to help a friend, Hang Le.  Tr. 6/23/08 at 67.  She did not give Ms. Ngo any money for the house.  Id.  Later, Ms. Chang transferred title of the house to Loan Le.  Again, no money was exchanged even though the transfer papers say that Loan Le paid Ms. Chang $25,000 for the

---

[2]Ms. Chang is also known by the nickname "Mo."  Tr. 6/23/08 at 73:8-9.

house. Id. at 71.[3] Ms. Chang transferred the title to Loan Le to "help, as favor, for friend," for Hang Le. Id. at 72:10-12. When she signed the transfer papers, her husband, Hang Le, Loan Le and an attorney were present. Id. at 81. See also, id. at 89.

Attorney Quac S. Ling prepared new deeds for the house on Claridge Street both when Ms. Ngo transferred the property to Ms. Chang and when Ms. Chang transferred the property to Loan Le. Tr. 6/23/08 at 91-92. Mr. Ling is not aware of any money being exchanged when title was transferred from Ms. Ngo to Ms. Chang. Id. at 92. He testified that Ms. Chang and Loan Le told him that consideration of $25,000 was paid when title was transferred to Loan Le, but that he did not witness any money change hands or see any mortgage papers. Id. at 93. He gave the women a receipt indicating that he had collected $1,000 for the transfer tax and recording fee. The receipt stated that the purchase price was $25,000, but Mr. Ling did nothing to confirm that information, which he received from Ms. Chang and Loan Le. Id. at 94. He said that no one else was present at the time. Id. at 93.

Hang Le testified that from 2003 until her arrest in October 2006 she worked as a drug dealer with a man named Lin Dam. Tr. 7/16/08 at 10. Hang Le made substantial profits, and she eventually gave $100,000 to Jackie Vong, a man she considered her adoptive father. Id. at 11. Mr. Vong used the money to start a gambling business, but Hang Le understood that the business did not perform well, which prevented Mr. Vong from repaying her. Id. at 12. Mr. Vong offered to give her the house on Claridge Street in repayment of the loan. Id. Hang Le said that because the house had cost $130,000, she gave Mr. Vong an addition $30,000 from her ill-gotten drug

---

[3]Ms. Chang's husband, David Chang, testified that he was not aware of his wife having paid Ms. Ngo any money for the house, Tr. 6/23/08 at 84, or Ms. Chang receiving any money from Loan Le when the house title was transferred out of Ms. Chang's name. Id. at 88.

trafficking profits. Id. at 13.

When Mr. Vong offered to sell Hang Le the house, Ms. Ngo still held its title. After Hang Le purchased the house, Ms. Ngo transferred the title to Ms. Chang. Id. Hang Le explained, "I did not put my name on the title because I'm afraid that the government will take my house away from me." Tr. 7/16/08 at 14:8-9.[4] When Ms. Chang wanted to remove her name from the title, Hang Le says that she asked her sister, Loan Le, to hold the title in her name. Id. at 15. Hang Le testified that she did not receive any money from her sister for the house and is not aware of Loan Le giving Ms. Chang any money. Id. Hang Le said that she paid the attorney to prepare the transfer deed when the house was retitled in Loan Le's name. Id. at 24.

Hang Le said that she never paid rent to live in the house on Claridge Street and that she paid for the house's upkeep. Id. at 27-28. Loan Le and Mr. Nguyen helped her fix the roof and a ceiling as well as repair damage from a burglary, but Hang Le said that she paid all related costs. Id. at 28. She always considered the house solely hers. Id. at 15:9, 28:17.

**III. Conclusion**

Although Loan Le did present her own and, to some extent, her fiancé's testimonial evidence of her purchase and ownership of the house on Claridge Street, she failed to meet the burden of persuasion she must carry in order to avoid forfeiture in this case. Loan Le testified that she paid $25,000 in cash for the house. However, no other witness corroborated this

---

[4] Hang Le testified about a conversation she had with Lin Dam prior to paying off the balance owed on a car the Government has since secured through forfeiture. During the conversation, which was recorded by the Government, she told Mr. Dam that she was concerned that the Government would take away the car, so she wanted Mr. Nguyen, Loan Le's fiancé, to hold the title in his name. Id. at 17-18.

assertion, and her own bank records do not reflect a $25,000 withdrawal.  She could not provide information about which bank branch she visited when she withdrew the money.  Further, neither she nor Mr. Nguyen could provide any documentation of their having received rent from Hang Le or paid for any of the expenses related to home ownership.  She presented no tax or utilities payment receipts or bills.  The Court acknowledges that difficulties are experienced by those individuals who conduct their business strictly in cash or have other cultural reservations about employing conventional approaches to the financial details of every day contemporary life in an urban setting such as Philadelphia, but still must consider the complete lack of documentation presented in Loan Le's support during the hearing.

In contrast, the Government has presented numerous witnesses, who, while varying slightly in their accounts of the various real estate transactions, still presented a remarkably consistent account of the ever-shifting ownership of the house at 5354 Claridge Street.

As stated above, a petitioner's bald assertion that the property is titled in her name is not sufficient for filing a claim under 21 U.S.C. § 853(n).  As the petitioner, Loan Le had to demonstrate by a preponderance of the evidence that she was more than a nominal owner of the house.  She had to establish that she had actual dominion and control over the property.  Loan Le has failed to meet this burden.  Accordingly, the Court will deny her Motions for Return of Property and will grant the Government's Motion for Judgment of Forfeiture.  An appropriate order follows.

BY THE COURT:

 /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOAN LE, : | |
|     Petitioner : | |
| : | NO. 06-CR-585-2 |
| v. : | |
| : | |
| UNITED STATES OF AMERICA, : | |
|     Respondent : | |

**ORDER**

AND NOW this 30th day of July 2008, upon consideration of the Government's Motion for Judgment and Preliminary Order of Forfeiture (Doc. No. 97), Loan Le's Opposition (Doc. No. 101), Loan Le's Motions for Return of Property (Doc. Nos. 136, 180) and the Government's Forfeiture Hearing Brief (Doc. No. 179), **IT IS ORDERED** that the Government's Motion is **GRANTED**, and Loan Le's Motions are **DENIED**.

BY THE COURT:

   /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE